**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**RICHARD J. THONERT**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

FILED

Dec 31 2012, 11:00 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD ROSTOCHAK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A05-1112-CR-688 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-0911-FA-132

**December 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Ronald Rostochak had an ongoing sexual relationship with his live-in girlfriend's daughter that began when the daughter was twelve years old and continued until she was fourteen years old. A jury convicted Rostochak of one count of class A felony child molesting. The trial court then sentenced Rostochak to the advisory sentence of thirty years, with five years suspended to probation. On appeal, Rostochak claims: (1) certain pretrial rulings violated his due process rights and therefore constituted reversible error; (2) the record does not establish that the jury reached a unanimous verdict; (3) the State presented insufficient evidence to sustain his conviction; (4) the trial court abused its discretion when it admitted certain evidence; and, (5) his sentence is inappropriate in light of the nature of the offense and his character. Finding no reversible error and concluding that Rostochak has not demonstrated that his sentence is inappropriate, we affirm.

**Facts and Procedural History**

The facts most favorable to the verdict indicate that M.E. was born on December 23, 1994. Her parents are divorced. When M.E. was in sixth grade, her mother began dating Rostochak. Rostochak was born in 1977 and was approximately thirty years old at the time he began dating M.E.'s mother. After just a couple of months, M.E., her mother, and her siblings moved into Rostochak's Whitley County house and began living with him. M.E., who had a very strained relationship with her father, grew very fond of Rostochak.

Rostochak treated M.E. differently than her siblings. He took M.E. on shopping trips almost every weekend. He did not take her sisters or her brother shopping. He bought M.E.

clothes, shoes, and an iPod. He almost never bought her siblings these kinds of gifts. He began telling M.E. what clothes he liked her to wear and became very possessive over M.E.'s time. He was jealous when she spent time with her friends and nicknamed her "Buttercup." Tr. at 228. He would take M.E. out riding on his tractor or combine. M.E. realized that her relationship with Rostochak was becoming more like that of a boyfriend and girlfriend and less like that of a father and daughter.

M.E. spent a great deal of time alone with Rostochak while her mother was at work and while her siblings were visiting her father. M.E. would not accompany her siblings to visit her father because she did not get along with her father. On one occasion, when M.E. was twelve years old, Rostochak touched her vagina and her breasts. Thereafter, around September 2007, twelve-year-old M.E. and Rostochak began engaging in sexual intercourse and deviate sexual conduct on a regular basis. M.E. told no one. The majority of the sexual encounters occurred after their shopping trips and would usually happen in Rostochak's house, in an apartment he was building in his barn, or in the back of his truck.

In late 2007, an old high school buddy of Rostochak's, Troy Tracey, visited with Rostochak at his home. During those visits, some of which were often overnight, Tracey noticed that Rostochak slept in the living room with M.E. and her siblings as opposed to in the bedroom with M.E.'s mother. Tracey also observed interactions between Rostochak and M.E. that made Tracey feel uncomfortable. One time, he saw M.E. sitting sideways on Rostochak's lap with her arms around his neck and her head on his shoulder. Another time, he watched as Rostochak sat on the couch and M.E. sat on the floor in front of Rostochak.

3

M.E. had her hand up Rostochak's pants leg and was rubbing his leg. Yet another time, Tracey observed that, while watching television, M.E. laid her head in Rostochak's lap as Rostochak rubbed and twirled her hair.

After M.E.'s thirteenth birthday, Rostochak and M.E. continued to have sexual intercourse regularly. They had sexual intercourse ten or more times that year. After M.E.'s fourteenth birthday, the sexual intercourse continued, and they had sexual intercourse ten or more times that year as well. Sometimes, when it was dark out, Rostochak would drive M.E. down to property he owned by a lake where no one could see them have sexual intercourse. M.E. definitely felt like she and Rostochak were boyfriend and girlfriend. They exchanged many text messages. They also exchanged letters declaring their love and devotion to one another. Although M.E. often referred to Rostochak as "Daddy," the letters evidenced more of a romantic relationship. State's Exh. N-DD, Defendant's Exh. C.

In approximately February 2008, Rostochak contacted Jody Hively, a caseworker for the Whitley County Department of Child Services, because he wanted to discuss with her "some allegations that he thought were going to be made against him." Tr. at 192. He discussed his living situation with M.E.'s family. He told Hively that he was not in love with M.E.'s mother, that he loved M.E., and that he was just trying to "fill in" for her father. *Id*. at 195. He said that M.E. also loved him. He did not discuss his relationship with M.E.'s siblings. He focused the discussion entirely on M.E.

Pursuant to a police investigation, in March 2008, Columbia City Police Detective Timothy Longenbaugh interviewed Rostochak, M.E.'s mother, M.E., and one of M.E.'s

siblings. Rostochak denied any sexual contact with M.E. M.E. also denied any sexual contact and told Detective Longenbaugh that her relationship with Rostochak was like a father-daughter relationship and that he had never touched her inappropriately. She assured Detective Longenbaugh that she was being honest and not trying to protect Rostochak. The police investigation was then suspended.

In late July 2009, Rostochak and M.E. met up at the 4-H fair. Rostochak asked M.E. if he could take her to lunch. They left in his truck and drove to his barn. They had sexual intercourse in the apartment he was building in the barn. Rostochak was annoyed at M.E. because she said that she needed to get back to the fair because her sister was going to be showing horses. They returned to the fair. After that day, M.E. and Rostochak ceased having a sexual relationship. M.E. decided that she "really didn't want anything to do with him." *Id*. at 284.

Sometime later, M.E. met with Hively and gave her a videotaped statement. She was not truthful with Hively about her sexual relationship with Rostochak. She told Hively only about one event when she and Rostochak had sexual intercourse in the barn. She described the event as a "rape." *Id*. at 285. M.E. eventually told her mother about the sexual intercourse with Rostochak, and in November 2009, M.E.'s mother contacted Detective Longenbaugh. M.E. came to the police station and agreed to place a phone call to Rostochak. Detective Longenbaugh, M.E.'s mother, M.E.'s aunt, and M.E.'s boyfriend were all present while M.E. called Rostochak, and the phone call was recorded.

On November 25, 2009, the State charged Rostochak with Count I, class A felony child molesting, and Count II, class B felony sexual misconduct with a minor. Count I alleged that, between the dates of September 1, 2007, and December 31, 2007, Rostochak performed sexual intercourse with a child under fourteen years of age. Count II alleged that, between the dates of July 17, 2009, and July 26, 2009, Rostochak performed sexual intercourse with a child at least fourteen years of age but less than sixteen years of age.

At an initial hearing held on November 30, 2009, Rostochak appeared with counsel Jeffrey Arnold and the trial court set an omnibus date for January 25, 2010. Thereafter, Arnold withdrew his appearance. New counsel, Travis Friend, entered an appearance on Rostochak's behalf on December 3, 2009, and filed a motion for pretrial discovery. Thereafter, on December 8, 2009, Rostochak successfully moved to reschedule the pretrial conference, which was held on January 11, 2010. Both parties appeared, and Rostochak requested a continuance of the conference until February 16, 2010. On that date, the parties again appeared and a jury trial was scheduled for July 13, 2010. Rostochak filed a witness and exhibit list and statement of defenses on March 11, 1010. Rostochak filed another discovery request on June 10, 2010. The State filed its witness and exhibit list on June 21, 2010. Then, on June 23, 2010, Rostochak moved to continue the trial. The trial court granted the motion and rescheduled trial for October 26, 2010. The State filed an amended witness and exhibit list on September 10, 2010.

On September 24, 2010, the State filed a motion to amend the charging information to expand the relevant dates. The amended information provided that Count I, child molesting, was expanded to include from September 1, 2007, to December 23, 2008, and Count II, sexual misconduct with a minor, was expanded to include from December 24, 2008, to August 1, 2009. Rostochak objected to the proposed amended information and again moved to continue the trial. On October 5, 2010, the trial court granted both the State's motion to amend and Rostochak's motion for continuance, and also scheduled a pretrial conference for October 18, 2010. On October 15, 2010, Friend withdrew his appearance and new counsel, Robert Love, entered an appearance on Rostochak's behalf. Rostochak filed another motion for discovery, and the jury trial was rescheduled for February 22, 2011, with a final pretrial hearing scheduled for February 14, 2011.

On January 31, 2011, Rostochak filed a motion to suppress evidence. The trial court scheduled a hearing on all pending motions on February 14, 2011. During the hearing, the trial court denied Rostochak's oral motion to continue the trial and scheduled another hearing on pending motions for February 22, 2011. Love withdrew his appearance on February 16, 2011, and the trial court appointed Anthony Churchward to represent Rostochak. Jury trial was scheduled for June 7, 2011. Discovery was ordered closed on February 24, 2011. On that date, Richard J. Thonert entered his appearance on Rostochak's behalf.

Rostochak filed various new motions including a motion for leave to file a belated alibi notice, motion to compel, motion to suppress, motion to make allegations more specific, and an oral motion to reopen discovery. The trial court took the motions under advisement.

Thereafter, the trial court granted Rostochak's motion to continue the trial and reset the trial date to September 12, 2011. On August 10, 2011, the State moved to continue the trial. Rostochak consented to the continuance, and the trial was again rescheduled for November 14, 2011. On August 17, 2011, the trial court denied the other pending motions, including Rostochak's motion to reopen discovery. Rostochak petitioned the trial court for certification for interlocutory appeal, which motion was denied on September 20, 2011. Rostochak also moved for a new omnibus date, which motion was denied on November 14, 2011.

The jury trial was held November 14 through 17, 2011. The jury returned a guilty verdict on Count I, class A felony child molesting. Following a hearing, the trial court sentenced Rostochak to the advisory sentence of thirty years, with five years suspended to probation, for a total executed sentence of twenty-five years. This appeal followed.

### Discussion and Decision

### I. Due Process

We first address Rostochak's argument that several trial court rulings deprived him of due process and therefore constituted reversible error.[1] Specifically, Rostochak argues that the trial court erred when it: (A) failed to schedule a new initial hearing and omnibus date after granting the State leave to amend the charging information; (B) denied Rostochak's notice of alibi and motion to enforce the alibi statute; and (C) denied Rostochak's motion to reopen discovery.

---

[1] Rostochak's counsel has included large portions of the transcript in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which provides, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

### A. Omnibus Date

Indiana Code Section 35-36-8-1(a) provides that an omnibus date in a felony case "must be no earlier than forty-five (45) days and no later than seventy-five (75) days after the completion of the initial hearing, unless the prosecuting attorney and the defendant agree to a different date." Once the omnibus date is set, it remains the omnibus date for the case until final disposition, unless specific statutory factors are met. Ind. Code § 35-36-8-1(d); *Singleton v. State*, 889 N.E.2d 35, 37 n. 2 (Ind. Ct. App. 2008). Here, the court held an initial hearing on November 9, 2009, and properly scheduled an omnibus date of January 25, 2010. Rostochak makes no argument that any of the specific statutory factors permitting reset of the omnibus date were met in this case.[2]

Instead, Rostochak argues that he was entitled to a new initial hearing and a new omnibus date because the trial court granted the State leave to amend the charging information. The amended information retained the class A felony child molesting count and

---

[2] Those statutory factors include:

> (1) the defendant requests a trial within time limits established by the Indiana rules of criminal procedure for early trial motions;
>
> (2) subsequent counsel enters an appearance after the omnibus date and previous counsel withdrew or was removed due to:
>
>> (A) conflict of interest: or
>>
>> (B) a manifest necessity required that counsel withdraw from the case;
>
> (3) the state has not complied with an order to compel discovery; or
>
> (4) the prosecuting attorney and the defendant agree to continue the omnibus date.

Ind. Code § 35-36-8-1(d).

the class B felony sexual misconduct with a minor count, but the dates of the alleged acts were expanded from "September 1, 2007 and December 31, 2007" and "July 17, 2009 and July 26, 2009" to "September 1, 2007 and December 23, 2008" and "December 24, 2008 and August 1, 2009." Appellant's App. at 161-62.

With respect to these amendments to the timeframe of the crimes, we note that time is generally not of the essence in child molesting cases. *Baber v. State*, 870 N.E.2d 486, 492 (Ind. Ct. App. 2007), *trans. denied*. "It is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases." *Id.* (citation and quotation marks omitted). Exact dates become important only in circumstances "where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Id.* (citation and quotation marks omitted). Such is not the case here, as M.E. was clearly within the age limitations set forth for class A felony child molesting, under fourteen years of age, both before and after the State's amendment to that charge, and she was also clearly within the age limitations set forth for class B felony sexual misconduct with a minor, at least fourteen but less than sixteen years of age, both before and after the State's amendment to that charge. *See* Ind. Code §§ 35-42-4-3, 35-42-4-9.

We remind Rostochak that, regardless of whether an amendment is of form or of substance, Indiana Code Section 35-34-1-5 permits amendment to the charging information at any time before the commencement of trial so long as the amendment does not prejudice

10

the substantial rights of the defendant.[3]  Rostochak has failed to cite relevant authority or to

adequately explain how the expansion of the relevant dates in the information prejudiced his

substantial rights or somehow entitled him to a new initial hearing and a new omnibus date.

## B.  Belated Alibi Notice

We can somewhat discern from his arguments that Rostochak's real complaint

regarding the omnibus date centers around the trial court's denial of his belated notice of

alibi and motion to enforce the alibi statute.  Indiana Code Section 35-36-4-1 provides that

when a criminal defendant intends to offer evidence of an alibi at trial, the defendant shall,

no later than twenty days prior to the omnibus date if the defendant is charged with a felony,

file with the court and serve upon the prosecuting attorney a written statement of his intention

to offer such a defense.[4]  If the defendant fails to file and serve a notice of alibi defense and

does not show good cause for his failure, "the court shall exclude evidence offered by the

defendant to establish an alibi."  Ind. Code § 35-36-4-3(b).  "The determination of whether a

defendant has established good cause is left to the discretion of the trial court."  *Washington*

*v. State*, 840 N.E.2d 873, 880 (Ind. Ct. App. 2006), *trans. denied*.

Rostochak did not file his notice of alibi until May 3, 2011, long after the January 25,

2010, omnibus date had already passed and long after the trial court granted the State leave to

---

[3] Although he fails to develop any argument on the issue, Rostochak cites our supreme court's opinion in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007), which has since been superseded in relevant part by the above-mentioned statute.

amend the information. Accordingly, by arguing that he was entitled to a new omnibus date, Rostochak is attempting to backdoor his belated notice of alibi. Rostochak's attempt fails for at least two reasons.

First, even assuming that Rostochak was entitled to a new omnibus date due to the State's amended information, his alibi notice was still too late. The trial court granted the State leave to amend the information on October 5, 2010. If an initial hearing had been also held on that date, the new omnibus date would have presumably been set within seventy-five days, or at the latest, December 20, 2010. Again, Rostochak did not file his notice of alibi until May 3, 2011, more than four months later. Thus, Rostochak's alibi defense would have been untimely even had the trial court held a new initial hearing and set a new omnibus date based upon the amended information. Rostochak has not shown how he could have been prejudiced by the trial court's failure to set a new omnibus date.

Second, new omnibus date or not, Rostochak has not established good cause for his failure to timely file his notice of alibi. Our legislature enacted the alibi statute to serve two main purposes. The statute protects "the defendant's ability to establish the defense by requiring the State to commit to a particular place and time that it intends to prove at trial as being the particulars of the crime." *Kroegher v. State*, 774 N.E.2d 1029, 1032 (Ind. Ct. App. 2002) (citations and quotation marks omitted), *trans. denied*. Moreover, "recognizing that

---

[4] In addition, when a defendant files a notice of alibi, the prosecuting attorney shall file with the court and serve upon the defendant, or upon his counsel, a specific statement containing the date the defendant was alleged to have committed the crime, and the exact place where the defendant was alleged to have committed the crime. Ind. Code § 35-36-4-2. However, the prosecutor need not comply with this requirement if he intends to present at trial the date and place listed in the information as the date and place of the crime. *Id*.

12

some defendants will fabricate an alibi, the second purpose of the statute is to allow the State to receive notice before trial regarding the place the defendant claims to have been when the crime was committed." *Id.*

Rostochak had ample opportunity to timely file a notice of alibi, and he provided neither the trial court nor this Court with good cause for his failure. It is well settled that when time is not of the essence of the offense, the State is only required to prove that the offense occurred any time within the statutory period of limitations. *Neff v. State*, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009), *trans. denied* (2010). As stated above, the amended information merely expanded the timeframe within which the alleged child molestation and sexual misconduct occurred. It was clear from the outset that the State was alleging that Rostochak had an ongoing sexual relationship with M.E. that began in September 2007. As noted by the State, it is impossible for the amended charges to have "given rise" to Rostochak's alibi defense. Appellee's Br. at 14. Indeed, we find it difficult to imagine what alibi one could provide regarding an ongoing sexual relationship. Nevertheless, if Rostochak had an alibi, he had it from the beginning but failed to assert it. The trial court did not abuse its discretion when it denied Rostochak's belated notice of alibi. Rostochak has not established reversible error.

## C. Discovery

Similarly, we cannot say that the trial court committed reversible error when it denied Rostochak's motion to reopen discovery. Trial courts have broad latitude with respect to discovery matters, and their rulings will only be overturned upon a showing of abuse of

13

discretion. *Skinner v. State*, 920 N.E.2d 263, 265 (Ind. Ct. App. 2010). Absent a clear violation of that broad discretion, and a showing of prejudice, a trial court's decisions will not be disturbed. *Jenkins v. State*, 627 N.E.2d 789, 798 (Ind. 1993), *cert. denied* (1994).

Rostochak has shown neither an abuse of discretion nor prejudice. On February 24, 2011, more than two years after charges were initially filed, and after extensive discovery and numerous continuances of the trial date had occurred, the trial court finally closed discovery. Approximately three months after discovery was closed, on May 17, 2011, Rostochak's new counsel requested that the court reopen discovery so that Rostochak could prepare and defend against the State's amended information. The trial court denied the motion.

On appeal, Rostochak's argument again focuses on the State's amended charging information. We reiterate that the amended information did not change the crimes charged but merely expanded the timeframe during which the crimes occurred. We also note that the trial court granted leave for the State to file its amended information on October 5, 2010, almost eight months prior to the close of discovery, giving Rostochak more than sufficient time to conduct additional discovery if necessary. During the hearing on Rostochak's motion to reopen, the trial court acknowledged that new counsel had appeared for Rostochak and reminded counsel, "When you agreed to appear in this case, you were taking the case as you found it . . . you had limitations on how much discovery could get done. In fact discovery had already closed …." Tr. at 82. As further explained by the trial court, "At some point we've got to put a lid on this and try this case so – put a lid on what we're doing right now." *Id*. at 83. Under the circumstances, we cannot say that the trial court abused its discretion

14

when it denied Rostochak's motion to reopen discovery. Moreover, other than a bald assertion that he was denied due process, Rostochak has failed to show how he was prejudiced by the trial court's denial.[5] We find no reversible error.

## II. Unanimous Verdict

Rostochak next contends that his conviction for child molesting must be reversed because the record is unclear as to whether the jury reached a unanimous verdict. Essentially, Rostochak complains that because the State charged him with multiple acts occurring over a period of time, there is no way of knowing which particular act of sexual intercourse, if any, the jury unanimously agreed upon. We disagree.

Our supreme court recently held that the State may, in its discretion, designate a specific act or acts on which it relies to prove a particular charge. "However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." *Baker v. State*, 948 N.E.2d 1169, 1177 (Ind. 2011) (citations omitted). Our review of the jury instructions indicates that the jurors here were

---

[5] We regret it is necessary to admonish Rostochak's appellate counsel regarding the quality of his written advocacy. His briefs are replete with bald statements and assertions unsupported by cogent argument or citation to authority. Indeed, mere citation to authority in support of an argument is insufficient if not also supported by cogent reasoning. Failure to provide cogent argument generally results in waiver of an issue on appeal. *See, e.g., Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009): Ind. Appellate Rule 46(A)(8) (requiring that contentions in appellant's briefs be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal). Although we address the lion's share of the issues presented on the merits as opposed to deeming them waived, we hope that counsel will be mindful of these responsibilities in future appeals.

properly instructed regarding unanimity as outlined above, and Rostochak makes no argument to the contrary. We also note that each individual member of the jury was polled as to the verdict, and each member affirmed his or her agreement. *Id*. at 516-17. Although the trial court denied Rostochak's request to poll each juror as to which specific act of sexual intercourse they had agreed on, the trial court polled the foreperson as to whether there was unanimity as to a specific act of sexual intercourse to support the conviction, to which the foreperson replied, "Yes." *Id*. at 517.[6] The record indicates that the jury reached a unanimous verdict, and therefore Rostochak has not demonstrated error, much less reversible error, on this issue.

### III. Sufficiency of the Evidence

We next address Rostochak's challenge to the sufficiency of the evidence to support his conviction for class A felony child molesting. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor assess witness credibility. *Id*. We consider conflicting evidence most favorably to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

---

[6] Rostochak makes much of the fact that, during this inquiry by the trial judge, the jury foreperson misspoke and initially referred to the conviction as sexual misconduct, the charge upon which the jury had just acquitted Rostochak, rather than child molesting. The foreperson quickly corrected the misstatement at the trial court's prompting, and we reject Rostochak's claim that the misstatement tends to indicate that the verdict was not unanimous.

16

In order to convict Rostochak of class A felony child molesting, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally performed or submitted to sexual intercourse or deviate sexual conduct with M.E. when she was under fourteen years of age. *See* Ind. Code § 35-42-4-3; *Medina v. State*, 828 N.E.2d 427, 430 (Ind. Ct. App. 2005) (stating that culpability required for child molesting conviction is knowingly or intentionally) *trans. denied*. M.E. testified that, when she was twelve and thirteen years of age, she had sexual intercourse with Rostochak on numerous occasions. Rostochak's sole argument regarding the sufficiency of the evidence is that this Court should reweigh M.E.'s uncorroborated testimony and reverse his conviction based upon the "incredible dubiosity rule."

Under the "incredible dubiosity rule" we may impinge upon the jury's responsibility to judge the credibility of witnesses when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony. *Manuel v. State*, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). Application of the incredible dubiosity rule is rare, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.* The rule applies only when a witness contradicts herself in a single statement or while testifying, and does not apply to conflicts between multiple statements. *Id.* Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," or where the witness was so equivocal about the act charged that her

uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Watkins v. State*, 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in relevant part*, 575 N.E.2d 624 (Ind. 1991). Rostochak cannot fit his case into either category.

First, we note that the uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction for child molesting. *Morrison v. State*, 462 N.E.2d 78, 79 (Ind. 1984). Rostochak makes no assertion that M.E.'s testimony was coerced, and we find no evidence of the same. Instead, Rostochak merely points to M.E.'s admission during her testimony that she had initially lied to police investigators and Child Services regarding her sexual encounters with Rostochak and that she had also lied during a deposition. However, M.E.'s trial testimony regarding the sexual intercourse was consistent, and at no time did she contradict herself while testifying. Instead, she explained the reasons for her earlier untruthfulness to investigators. The jury had the opportunity to hear M.E.'s testimony and to determine her credibility. We decline Rostochak's invitation to impinge on the province of the jury and reassess that credibility.

Rostochak boldly maintains that "common sense and human experience" proves that M.E.'s testimony was inherently improbable because, if she were telling the truth about having sexual intercourse with Rostochak, it would have been impossible for her mother not to have known about it, and her mother surely would not have consented to sharing her daughter with Rostochak as a sexual partner. Appellant's Br. at 18-19; Appellant's Reply Br. at 13-14. Based on the evidence in this case, it is incorrect to imply that it was impossible for M.E.'s mother to have been unaware of the molestation or that the veracity of M.E.'s claims

hinged upon that unawareness. M.E.'s testimony that she had sexual intercourse with Rostochak was not so inherently improbable that no reasonable person could believe it.

Additionally, we note that although M.E.'s testimony as to specific acts of sexual intercourse may have been uncorroborated, her assertion of a romantic and inappropriate relationship with Rostochak did not go without some corroboration. The State presented numerous love letters written between M.E. and Rostochak that were clearly consistent with a romantic relationship between the pair. Also, other witnesses confirmed that they observed romantic behavior between Rostochak and M.E. Obviously, that additional evidence bolstered M.E.'s credibility as to the sexual intercourse, and, as stated above, we see no reason to impinge on the jury's responsibility to judge that credibility. The State presented sufficient evidence to sustain Rostochak's conviction for child molesting.

### IV. Admission of Evidence

Rostochak makes two challenges to the trial court's admission of evidence at trial. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we will review the admission of evidence solely for an abuse of discretion. *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012). However, even if the trial court erroneously admits evidence, such error will be disregarded unless it affects the substantial rights of a party. *Id*. at 1238. Specifically, we look to the probable impact of the erroneous admission on the jury. *Id*. The improper admission of evidence is harmless error if the

conviction is supported by substantial evidence of guilty satisfying this Court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.*

Rostochak claims that the trial court abused its discretion when it admitted the testimony of Barbara Vernon because it constituted impermissible vouching testimony and thus invaded the province of the jury. He also claims the trial court abused its discretion when it admitted the audio recording of a telephone conversation between Rostochak and M.E. We will address each argument in turn.

### A. *Vouching Testimony*

Regarding improper vouching testimony generally, Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Such vouching testimony is an invasion of the province of the jurors in determining the weight they should place upon a witness's testimony. *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012). It is essential that the trier of fact determine the credibility of the witnesses and the weight of the evidence. *Id.*

During its case-in-chief, and after M.E. testified, the State offered the testimony of Barbara Vernon, a psychologist, and the senior director for the Elkhart County Child and Parent Services ("CAPS"). Tr. at 476. On direct examination, Vernon testified very generally regarding the common misconception that child sexual abuse victims will disclose the abuse immediately or shortly after it occurs. Vernon indicated that abuse victims often take weeks, months, or even years to reveal the abuse. She stated that frequently children

20

will deny the abuse initially when asked. Vernon testified that "tentative piecemeal disclosure" is quite common. *Id*. at 479.

We disagree with Rostochak that Vernon's testimony ran afoul of Indiana Evidence Rule 704(b). Nowhere in her testimony did Vernon mention M.E. or make any statement or opinion regarding the truth or falsity of M.E.'s allegations of molestation. Vernon did not purport to have any opinion regarding the case at bar, nor did she refer to any specific facts at issue. Vernon's testimony was broad and generalized. Indeed, on cross-examination, Vernon testified that she had never interviewed M.E. Under the circumstances, Vernon's testimony did not constitute impermissible vouching testimony.

Instead, we agree with the State that Vernon's testimony was properly admitted as rebuttal evidence. Rebuttal evidence "is limited to that which tends to explain, contradict, or disprove evidence offered by the adverse party." *Conley v. State*, 972 N.E.2d 864, 872 (Ind. 2012) (citations omitted). On cross-examination of M.E., defense counsel elicited testimony that she had given false statements to law enforcement and did not initially disclose the molestation to law enforcement despite ample opportunity to do so. Defense counsel also elicited testimony from M.E. that, in a prior statement, she had described the sexual intercourse with Rostochak as rape rather than consensual, which contradicted her trial testimony. Vernon's testimony tended to explain this evidence and to contradict defense counsel's implication that only dishonest people behave in the way M.E. behaved. The trial court did not abuse its discretion when it admitted Vernon's testimony.

21

## B. *Audio Recording*

Rostochak next argues that the trial court erred when it denied his motion to suppress an audio recording of a telephone conversation between him and M.E. Although Rostochak frames our standard of review with regard to the trial court's denial of his motion to suppress, because he appeals after a completed trial, the question of whether the trial court erred in denying his motion to suppress is no longer viable. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Rather, the issue is more appropriately framed as whether the trial court abused its discretion when it admitted the evidence at trial. *Id.*

Rostochak first claims that the audio recording of his telephone conversation with M.E. was improperly admitted because the phone call occurred under police supervision, and therefore he was denied his right to counsel at the time of the conversation. Rostochak cites our supreme court's opinion in *Jewell v. State*, 957 N.E.2d 625 (Ind. 2011), to support his position. However, other than mere citation to *Jewell*, Rostochak fails to provide any analysis of *Jewell* or its application to the case at bar, nor does he provide any analysis of the Sixth Amendment right to counsel or Article 1, Section 13 of the Indiana Constitution.[7] Failure to make a cogent argument on these issues constitutes waiver on appeal. *Polk v. State*, 822 N.E.2d 239, 245 n.5 (Ind. Ct. App. 2005), *trans. denied*; Ind. Appellate Rule 46(A)(8).

Rostochak maintains that the trial court abused its discretion when it admitted the audio recording because the prejudicial impact of the evidence substantially outweighed its

---

[7] Possibly because the holding in *Jewell* does not support Rostochak's position here.

probative value. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Indiana Evidence Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." The trial court is afforded wide latitude in weighing probative value against unfair prejudice under Evidence Rule 403. *Freed v. State*, 954 N.E.2d 526, 531 (Ind. 2011).

The audio recording of M.E.'s phone conversation with Rostochak provided context for the jury regarding the romantic and sexual relationship that existed between the pair. The conversation included several references by Rostochak of his love for and complete devotion to M.E. When M.E. expressed that she was very troubled and upset that the two had engaged in sexual intercourse, Rostochak responded "then why did you" and "I didn't make you do anything." State's Exh. 1 at 5. This evidence tends to make the fact that Rostochak had sexual intercourse with M.E. more probable than it would be without the evidence. While we agree with Rostochak that this evidence is prejudicial, we cannot say that it is unfairly so. Indeed, this evidence was cumulative of M.E.'s direct testimony that she and Rostochak engaged in sexual intercourse when she was twelve and thirteen years old. The trial court did not abuse its discretion when it admitted the audio recording.

## V. *Appropriateness of Sentence*

Finally, Rostochak invites this Court to reduce the sentence imposed by the trial court. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if,

23

after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Upon appellate review, we have the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). The difference between time executed and time suspended to probation is relevant in determining the appropriateness of a sentence. *Jenkins v. State*, 909 N.E.2d 1080, 1085 (Ind. Ct. App. 2009), *trans. denied*.

The sentencing range for a class A felony is between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. As to the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Here, the trial court sentenced Rostochak to the advisory sentence of thirty years, with five years suspended to probation. Rostochak makes no argument that the nature of his offense warrants a sentence reduction below the advisory, and we see no reason to make such an argument for him. On numerous occasions, Rostochak had sexual intercourse with a twelve-year-old girl after seducing her with shopping trips and with the emotional attention she craved. He was the live-in boyfriend of

M.E.'s mother and as such, occupied a significant position of trust in M.E.'s life. The reprehensible nature of this offense speaks for itself.

Regarding his character, Rostochak emphasizes that he has no criminal history. He further points to his volunteer work and exemplary community involvement as reasons for leniency. However, Rostochak's poor character can be gleaned from his willingness to abuse his position of trust and molest a young girl. It is evident from the record that Rostochak may have actually believed that he was in a mature consensual sexual relationship with M.E., which is all the more troubling. She was a child and he was an adult more than twice her age. He has forever damaged a young life. Rostochak has not met his burden to persuade us that his sentence is inappropriate in light of the nature of the offense and his character. Rostochak's conviction and sentence are affirmed.

Affirmed.

RILEY, J., and BAILEY, J., concur.