# FOR PUBLICATION



FILED

Feb 22 2012, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AARON WESTLAKE**
Thomas Law Firm, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ERNESTO GUTIERREZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  44A03-1106-CR-257 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAGRANGE SUPERIOR COURT
The Honorable George E. Brown, Judge
Cause No. 44D01-0912-FA-15

**February 22, 2012**

**OPINION—FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Ernesto Gutierrez appeals his convictions for two counts of Child Molesting,[1] a class A felony.  Specifically, Gutierrez contends that his convictions must be reversed because the trial court improperly admitted vouching testimony from two of the State's witnesses as to whether the victim was telling the truth.  Gutierrez also claims that the deputy prosecutor engaged in misconduct by eliciting the improper vouching testimony and commenting about that testimony during closing argument. Concluding that the trial court erred in admitting improper vouching testimony that invaded the province of the jury and prejudiced Gutierrez's substantial rights, we reverse and remand for a new trial.

FACTS

M.L. was born on November 10, 1998, and lived with her two sisters, her mother—Elizabeth—and Gutierrez, her stepfather.  Sometime between the middle of June 2009, and the end of August 2009, Gutierrez would touch M.L. in her bedroom, or in the room that Gutierrez and Elizabeth shared.  M.L. stated that Gutierrez would touch her with his hands, his mouth, and place his penis on her genitals and breasts while M.L.'s sisters were sleeping.   M.L. also reported that Gutierrez had sexual intercourse with her on at least three occasions.

Despite the abuse, M.L. wrote President Obama asking for help in bringing Gutierrez back to the United States after he had left for Mexico because Elizabeth and her sisters were suffering financially in his absence.

---

[1] Ind. Code § 35-42-4-3(a)(1).

Although M.L. eventually told Elizabeth about some of Gutierrez's conduct, she only told her about the times that Gutierrez had kissed her neck and breast. Thereafter, Elizabeth reported these incidents to representatives of the Department of Child Services (DCS). M.L. was subsequently interviewed and a sexual assault nurse, Michelle Ditton, examined M.L. At some point, M.L. told Nurse Ditton that Gutierrez had fondled her and penetrated her vagina with his penis. Nurse Ditton determined that the results of M.L.'s physical examination were "normal," as is the case in ninety to ninety-five percent of child molest victims. Tr. p. 134.

M.L. was deposed on May 19, 2010, in connection with the incidents. M.L. testified that Gutierrez had touched her breasts and her "middle part" and performed oral sex on her. Appellant's App. p. 56-61. However, M.L. did not testify that Gutierrez had touched her with his penis or placed it inside of her. M.L. also testified that there was one incident where she thought that Gutierrez was going to touch her, but he did not. M.L. then acknowledged that there were no additional incidents during the summer of 2009.[2]

During a jury trial that commenced on March 24, 2011, the State called M.L. as its first witness. On direct examination, M.L. testified that Gutierrez touched her "private part" and her breasts, performed oral sex on her, and put his penis inside of her while she was sleeping next to her sisters in her parents' room. Tr. p. 85-87. M.L. also testified

---

[2] M.L. did, however, testify as to some uncharged incidents that allegedly occurred at least a year-and-one-half prior to the summer of 2009.

3

about an incident similar to the one that she testified about in her deposition where Gutierrez allegedly came into her room but never touched her. As in the deposition, M.L. testified that there were no other incidents that occurred between her and Gutierrez during the summer of 2009. However, M.L. also testified about several uncharged incidents that had allegedly occurred almost two years before the summer of 2009.

M.L.'s testimony was contradictory on cross examination. For instance, when M.L. testified about her earlier testimony, she acknowledged there was only one occasion that Gutierrez touched her during the summer of 2009. However, M.L. testified that she had told one of the police officers that Gutierrez actually had touched her on two occasions during that period.

Upon further questioning, M.L. testified that she informed Ditton that there were more than two, but less than ten times, that Gutierrez vaginally penetrated her during the summer of 2009. However, M.L. then maintained that there were actually more than ten instances of vaginal penetration during that time period. M.L. again changed her testimony and testified that there were only about three times during the summer of 2009 that Gutierrez had vaginally penetrated her.

The State next called Ditton, who testified that M.L. had a completely "normal exam" and she had no knowledge to confirm that any molestation occurred besides what M.L. had told her. Tr. p. 134, 140. At one point, Ditton was permitted to testify, over counsel's objection, that she believed that M.L. was telling the truth. More particularly, when Ditton was asked about whether she believed M.L., counsel objected on the

4

grounds that such testimony would damage "the province of the jury as to whether she's telling the truth or not." Id. at 138-39. The trial court overruled the objection, and responded, "I agree, but I think it's up to the jury to give that opinion whatever weight it deems appropriate, so I'll overrule that objection." Id. Ditton then responded as follows:

> I believe based on the time frame since the last occurrence, based on the fact that she told me she never had any bleeding, based on the fact that it felt good that it probably was—when the penis was on the clitoris, based on the fact of how easily, even if there was minor injury to that tissue, based on the fact, again, probably the most important that that tissue is very estrogenized thick, could easily accommodate a speculum, a penis, a baby's head, I didn't expect to find any injury before I even looked at her.

Id.

The State also called Penny Hasselman, a case manager with the LaGrange DCS, to testify about whether she believed that M.L. was telling the truth about the molestations. More specifically, the deputy prosecutor asked Hasselman: "With your time being spent with [M.L.], and hearing what happened in the deposition, did you believe what she was saying?" Tr. p. 172. Hasselman responded, "absolutely." Id. The deputy prosecutor then asked if Hasselman could explain why she believed M.L., and Gutierez's counsel objected on the grounds of relevance. Id. The deputy prosecutor then remarked that "I think [the jury] should hear why she believes from her past experience." Id. at 173. The trial court then sustained defense counsel's objection to this comment on the grounds of relevance.[3]

---

[3] Gutierrez's counsel was obviously uncomfortable with this line of questioning. And it is likely that the objection was framed on the grounds of relevance because the earlier objection to similar testimony on the grounds that it invaded the province of the jury was overruled.

During closing argument, the deputy prosecutor offered an additional opinion concerning the believability of both M.L. and Gutierrez, stating that "Apparently, the priest believed [M.L.] because he reported it. We know the police officers believe her. We know the welfare lady believes her. She said so. The sexual assault lady believed what she had to say. Lot[s] of people are in her corner." Tr. p. 233. The Prosecutor also remarked that he believed that Gutierrez had lied and "lied a lot." Id. at 234-35. Gutierrez was found guilty on both counts and he now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

The trial court has broad discretion in ruling on the admission or exclusion of evidence. Kimbrough v. State, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on review of admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. Conrad v. State, 938 N.E.2d 852, 855 (Ind. Ct. App. 2010). An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. Oatts v. State, 899 N.E.2d 714, 719 (Ind. Ct. App. 2009).

However, we also note that even if the trial court erroneously admits evidence, we will not reverse if the admission was harmless error. Micheau v. State, 893 N.E.2d 1053, 1059 (Ind. Ct. App. 2008). And a claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Schmid v. State, 804 N.E.12d 174, 181 (Ind. Ct. App. 2004). In determining whether

6

error in the introduction of evidence affected an appellant's substantial rights, we will assess the probable impact of the evidence on the jury. McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996).

## II. Gutierrez's Claims

In addressing Gutierrez's claims regarding the admission of Ditton and Hassleman's allegedly improper vouching testimony, we initially observe that Indiana Evidence Rule 704(b) provides that "witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Even before the adoption of the Indiana Rules of Evidence, our Supreme Court had prohibited such testimony to bolster a child's testimony in a child molesting case. Head v. State, 519 N.E.2d 151, 153 (Ind. 1988). Such testimony is an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony. Id. In other words, it is essential that the trier of fact determine the credibility of the witnesses and the weight of the evidence. Thompson v. State, 529 N.E.2d 877, 878 (Ind. Ct. App. 1988 ).

In this case, contrary to the State's assertion, it is our view that Ditton's testimony ran afoul of Indiana Evidence Rule 704(b)'s prohibitions. When the deputy prosecutor asked Ditton whether she formed an opinion as to whether she believed M.L., the clear inference from Ditton's response was to vouch for M.L. Thus, we must conclude that the trial court erred in admitting that testimony into evidence. See Rose v. State, 846 N.E.2d

7

363, 369 (Ind. Ct. App. 2006) (observing that a physician's testimony that he believed a child molesting victim's allegations invaded the province of the jury).

As for Hasselman's testimony, Gutierrez concedes that defense counsel failed to object in a timely fashion and on proper grounds. Thus, the issue is generally waived. See Brown v. State, 783 N.E.2d 1121, 1125 (Ind. 2003) (observing that the failure to contemporaneously object to the admission of evidence at trial results in waiver of the error on appeal). However, in an effort to avoid waiver, Gutierrez maintains that Hasselman's improper opinion testimony must be reviewed under the fundamental error standard. That is, if the error in the admission of evidence is such that it "makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm," relief may be granted because the error is so fundamental. Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009).

When examining the exchange between the deputy prosecutor and Hasselman, it is readily apparent that the provisions of Indiana Evidence Rule 704(b) were violated, which resulted in an invasion of the province of the jury to judge the credibility of the witnesses. As noted above, Hasselman testified that she "absolutely" believed M.L.'s testimony. Tr. p. 172. And the deputy prosecutor contemporaneously inserted his own opinion that he believed M.L. Therefore, the admission of Hasselman's testimony amounted to fundamental error.

8

Notwithstanding the prohibitions regarding the admission of vouching testimony, the trial court allowed such testimony to be shared with the jury. And, to compound matters, the deputy prosecutor improperly told the jury that he believed M.L.'s testimony. Thus, we are compelled to reverse Gutierrez's convictions and order a new trial free of prohibited matters.

The judgment of the trial court is reversed and this cause is remanded for a new trial.[4]

DARDEN, J., and BAILEY, J., concur.

---

[4] In light of our decision to reverse Gutierrez's convictions for the reasons set forth above, we need not address his separate contention that the deputy prosecutor engaged in misconduct by his comments during closing argument and "continuously offering improper opinion testimony" at trial. Appellant's Br. p. 14.