## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 01 2016, 6:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven A. Bedford, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 1, 2016 <br><br> Court of Appeals Case No. <br> 84A01-1508-CR-1185 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable Michael J. Lewis, Judge <br><br> Trial Court Cause No. <br> 84D06-1407-FB-1986 |

**Baker, Judge.**

[1] Steven Bedford appeals his convictions for Aggravated Battery,[1] a Class B Felony, and Child Solicitation,[2] a Class D Felony. He argues that the trial court erred by excluding certain evidence and refusing certain jury instructions. He also argues that there is insufficient evidence supporting his conviction for aggravated battery and that there is a clerical error on the abstract of judgment. Finding no error other than the clerical error on the abstract of judgment, we affirm but remand with instructions to correct the abstract of judgment.

## Facts

[2] In June 2014, Bedford had fallen on hard times, with no employment and no place to live. His sister, Jenny Bedford, and her long-time boyfriend, David Dunigan, allowed Bedford to stay in the sunroom in their house. David and Jenny's daughter, A.D., also lived in the house, and her friend, E.C., would come over often. In June 2014, both A.D. and E.C. were twelve years old.

[3] From the time he moved in, Bedford would make inappropriate sexual comments to E.C. He repeatedly told her that she was cute, that she was hot, "and that he was gonna do her." Tr. p. 32. He also invited her to join him in the sunroom so that he could sleep with her. When Dunigan learned of these comments, he told Bedford to stop, and called the police, but the police did not take action.

---

[1] Ind. Code § 35-42-2-1.5.

[2] I.C. § 35-42-4-6(b).

[4] On one occasion in June 2014, A.D. and E.C. were on the front porch when Bedford approached. He again told E.C. that "he was gonna do" her, and A.D. told him "that's nasty." *Id.* at 34. Bedford responded: "what are you talking about, I could turn incest and do you any minute." *Id.* A.D went inside and told her mother what Bedford had said, and Jenny told Dunigan. Dunigan intended to confront Bedford about the comments and tell him to leave, but Bedford had left the house.

[5] On June 24, 2014, Dunigan walked into the sunroom and asked Bedford whether he had made the incest comment to A.D. Bedford confirmed that he had, but said "words are words." *Id.* at 75. Dunigan told Bedford to leave immediately, but Bedford believed that he had a right to stay for thirty days. Bedford told Dunigan to call the cops. Dunigan said, "if the cops give you those thirty days . . . I'm going to stay out [here] with you every day and every night." *Id.* at 76. Dunigan told him that he could not be around Dunigan's kids anymore. Bedford told Dunigan that he was going to force A.D. to perform oral sex on him and force Dunigan to watch. *Id.*

[6] The two men argued back and forth. Then, Bedford said, "oh no bro," *id.* at 78, and pushed Dunigan against the wall. Dunigan pushed him back, and the two began to fight. Bedford then picked up a stapler and hit Dunigan on the head, twice. Dunigan later recounted, "Instantly had my eyes full of blood, couldn't see nothin'." *Id.* at 79. Bedford got on Dunigan's back, put his arm around Dunigan's neck, and began choking him. Dunigan was able to stand up

and ram Bedford into a wall. Bedford then walked out of the house, pushing Jenny and A.D. as he left.

[7] The police arrived shortly thereafter and called an ambulance for Dunigan. At the hospital, he required thirteen staples to close the wound on his head.

[8] On July 29, 2014, the State charged Bedford with aggravated battery, a Class B felony; battery by means of a deadly weapon, a Class C felony; child solicitation, as a Class C and Class D felony; battery resulting in bodily injury, as a Class A misdemeanor and a Class D felony; and two counts of battery, a Class B misdemeanor. Following his June 29, 2015, trial, the jury found Bedford guilty of aggravated battery, battery by means of a deadly weapon, and both child solicitation counts, but not guilty of the remaining charges.

[9] At his trial, Bedford sought to have his mother testify that Dunigan had previously kicked a cousin out of his house and then stolen her property, and Bedford attempted to make an offer of proof to this effect. Dunigan denied the allegation, and the trial court excluded this evidence. Bedford also tendered several self-defense instructions; the trial court gave two of these instructions regarding defense of one's person, but did not give instructions regarding defense of one's property.

[10] On August 5, 2015, the trial court sentenced Bedford to six years imprisonment for aggravated battery, and one-year sentences suspended to probation for each child solicitation conviction. Although the trial court stated at the sentencing hearing that it was vacating the conviction for battery by means of a deadly

weapon out of double jeopardy concerns, that ruling was not reflected on the abstract of judgment, which instead lists that conviction as being merged with the conviction for aggravated battery. Bedford now appeals.

## Discussion and Decision

Bedford has four arguments on appeal. First, he argues that the trial court erred by excluding evidence that Dunigan evicted a tenant and stole her property. Second, he argues that the evidence is insufficient to support his aggravated battery conviction. Third, he argues that the trial court erred by rejecting some of his proposed final instructions on self-defense. Finally, he argues that the case should be remanded so that the abstract of judgment can be corrected to show that his conviction for battery by means of a deadly weapon was vacated.

## I. Excluded Evidence

Bedford sought to introduce evidence that Dunigan evicted a previous tenant and stole her property. He argues that this evidence should have been admitted under Indiana Evidence Rule 404(b)(2), which provides an exception to the general rule that character evidence is inadmissible, stating that evidence of a wrong "may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of mistake." Bedford also points to Evidence Rule 616: "Evidence that a witness has a bias, prejudice, or interest for or against any party may be used to attack the credibility of the witness." Finally, although he did not raise this argument at trial, he argues that the exclusion of this evidence violated his rights under the

Sixth Amendment to the United States Constitution, alleging that he was unable to effectively cross-examine Dunigan or present a defense without this evidence.

[13] The trial court has broad discretion in ruling on the admission or exclusion of evidence, and its ruling will be disturbed only if it is clearly against the logic, facts, and circumstances presented. *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012). Moreover, even if the trial court erroneously admits or excludes evidence, we will not reverse if the admission or exclusion was harmless error. *Id.* A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. *Id.*

[14] The State advances a number of responses for why this evidence was properly excluded by the trial court, and we find one dispositive: this evidence was not relevant. Indiana Evidence Rule 402 says that irrelevant evidence is not admissible. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evid. Rule 401.

[15] Since his initial encounters with police, Bedford has admitted that he struck Dunigan. His entire defense was based on a theory of self-defense. The facts that were of consequence related to who initiated the confrontation, who escalated the confrontation, and whether Bedford used excessive or unreasonable force during the confrontation. Even if we grant the truth of Bedford's allegations—and we note that they were adamantly denied, during

the offer of proof, by Dunigan, and would have rested solely on hearsay testimony from Bedford's mother—that Dunigan had an ulterior motive to evict Bedford, that would not justify Bedford pushing Dunigan, nor would it influence the determination of whether Bedford unreasonably escalated the fight by beating Dunigan with a stapler. In short, whether Dunigan had previously evicted a tenant is of no consequence, it was irrelevant to this case, and evidence regarding this allegation was properly excluded.

[16] As for Bedford's Sixth Amendment argument, he acknowledges that, because he did not raise it to the trial court, he must establish that fundamental error occurred. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014).

[17] Although the right to present a defense, which includes the right to present the defendant's version of the facts, is of the utmost importance, it is not absolute. *Marley v. State*, 747 N.E.2d 1123, 1132 (Ind. 2001). "[T]he accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

[18] One of our established rules of evidence is Indiana Evidence Rule 402, which prohibits the admission of irrelevant evidence. As discussed above, the

evidence Bedford sought to admit was irrelevant and was properly excluded. Therefore, his Sixth Amendment right to present a defense was not violated.

## II.  Insufficiency of the Evidence

[19]  Bedford argues that there is not sufficient evidence supporting his conviction for aggravated battery.  Specifically, he argues that the State failed to rebut his theory of self-defense and that the State did not prove that Bedford's attack created a substantial risk of death or caused serious permanent disfigurement or protracted loss or impairment of a bodily member or organ.  I.C. § 35-42-2-1.5.

[20]  When reviewing the sufficiency of the evidence supporting a conviction, we will neither reweigh the evidence nor assess witness credibility.  *Harbert v. State*, 51 N.E.3d 267, 275 (Ind. Ct. App. 2016).  We will consider only the evidence supporting the judgment and any reasonable inferences that may be drawn therefrom, and we will affirm if a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  *Id.*  Additionally, when a defendant claims that the evidence was insufficient to rebut his self-defense claim, the standard of review is the same as the sufficiency standard.  *Shoultz v. State*, 995 N.E.2d 647, 660 (Ind. Ct. App. 2013).

[21]  Bedford's sufficiency argument regarding self-defense is unavailing for several reasons.  First, a person claiming self-defense is required to show, among other things, that he did not provoke, instigate, or participate willingly in the violence.  *Shoultz*, 995 N.E.2d at 660.  Here, the jury heard evidence that Bedford initiated the physical confrontation by pushing Dunigan before

Dunigan pushed him. This fact alone would be sufficient to rebut Bedford's self-defense claim.

[22] Second, Bedford told Dunigan's twelve-year-old daughter that he would "turn incest" and have sex with her, tr. p. 34, and then told Dunigan that he was going to make Dunigan's daughter perform oral sex while Dunigan watched. *Id.* at 76. Thus, even if Dunigan had pushed Bedford first, Bedford still would not be justified in using self-defense because he provoked the confrontation.

[23] Bedford's argument regarding serious permanent disfigurement likewise fails. A permanent disfigurement is a continuing or enduring change that makes something less complete, perfect, or beautiful in appearance or character. *Cornelious v. State*, 988 N.E.2d 280, 283 (Ind. Ct. App. 2013). Here, Bedford caused a serious gash that covered Dunigan in blood and required thirteen staples to close. Dunigan was left with a scar on top of his bald head. This is sufficient evidence that Dunigan was permanently disfigured, and therefore there was sufficient evidence supporting this element of the aggravated battery statute.

## III. Jury Instructions

[24] Jury instruction is a matter within the trial court's sound discretion, and is a determination to which we grant "great deference." *Cline v. State*, 726 N.E.2d 1249, 1256 (Ind. 2000). In reviewing a trial court's decision to give or refuse tendered instructions, we consider (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of

the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Chambers v. State*, 734 N.E.2d 578, 580 (Ind. 2000).

[25] Under Indiana law, a citizen is permitted to use force in self-defense in certain scenarios. Ind. Code § 35-41-3-2. The trial court instructed the jury on subsection (c), which permits a person to use reasonable force against any other person to protect himself from what he reasonably believes to be the imminent use of unlawful force. I.C. § 35-41-3-2(c); Tr. p. 331.

[26] Bedford also requested a self-defense instruction based on Indiana Code section 35-41-3-2(d), which provides the following:

> A person is justified in using reasonable force, including deadly force, against any other person; and does not have a duty to retreat; if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle.

He also tendered a number of instructions that defined a dwelling, a tenant, and a rental unit. He sought to argue to the jury that he was defending his "dwelling"—the sunroom in Dunigan's house—from Dunigan's unlawful entry.

[27] A defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence. *Howard v. State*, 755 N.E.2d 242, 247 (Ind. Ct. App. 2001). However, a trial court does not err

by refusing to instruct the jury on a theory of self-defense if that theory has no foundation in the evidence. *Id.* at 248.

[28] There was no evidence in the record that Bedford used force to protect his dwelling. The sunroom of Dunigan's home is a part of *Dunigan's* dwelling, not Bedford's. Both Dunigan and Jenny testified that Bedford paid no rent and that he was invited to stay in the sunroom because he had no other place to go. Moreover, it is unclear to us what "unlawful entry" Bedford thinks he was terminating—Dunigan did not commit any unlawful entry by walking into *his own* sunroom.

[29] Bedford was unemployed and homeless and was given a place to stay by family members. He began making illicit sexual comments to the young daughter of the homeowner and the daughter's young friend. When asked to leave, Bedford told Dunigan that he would force Dunigan's daughter to perform oral sex while Dunigan watched, and then physically assaulted him. This is not the type of behavior our legislature intended to sanction by enacting Indiana Code section 35-41-3-2(d), and the trial court did not err by refusing this tendered instruction.

## IV. The Abstract of Judgment

[30] Both parties agree that the abstract of judgment incorrectly states that the conviction for battery by means of a deadly weapon was merged into the conviction for aggravated battery. At the sentencing hearing, the trial court stated that it was vacating that conviction. We agree with Bedford that the

abstract of judgment should be corrected, and we remand for that limited purpose.

[31] The judgment of the trial court is affirmed and remanded with instructions to correct the abstract of judgment to show that the conviction for battery by means of a deadly weapon was vacated.

Vaidik, C.J., and Najam, J., concur.