## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 27 2017, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy P. Payne
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacob L. Robertson,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

December 27, 2017

Court of Appeals Case No.
53A04-1705-CR-1153

Appeal from the Monroe Circuit Court

The Honorable Marc R. Kellams, Judge

Trial Court Cause No.
53C02-1410-F1-995

**Bradford, Judge.**

# Case Summary

[1] In August of 2014, A.G. was attending Indiana University in Bloomington, and Appellant-Defendant Jacob Robertson was in Bloomington visiting a mutual acquaintance. A.G. and Robertson knew each other from high school and had previously engaged in a brief sexual relationship. After visiting one party, A.G. communicated with Robertson, expecting him to lead her to another party where their mutual acquaintance was. Instead, Robertson met A.G., led her to an isolated location, and told her that he would take her to the party only if she fellated him. When A.G. refused Robertson's advances, he strangled her to unconsciousness. When A.G. came to, Robertson's penis was exposed, and he was attempting to force it into her mouth. When A.G. threatened to scream, Robertson fled.

[2] Following a bench trial, the trial court found Robertson guilty of Level 3 felony attempted rape, Level 5 felony criminal confinement, Class A misdemeanor battery, as well as Level 6 felony strangulation. The trial court imposed an aggregate sentence of eight years, with six years suspended to probation, eighty-five days to be executed in jail, and the remainder of the executed sentence to be served on home detention. Robertson argues that his convictions for criminal confinement, battery, and strangulation violated prohibitions against double jeopardy; the trial court abused its discretion in admitting certain evidence; and the admission of allegedly vouching testimony amounted to fundamental error. Because we agree with Robertson's first contention but not the rest, we affirm in part and reverse his battery and strangulation convictions.

# Facts and Procedural History

[3] Robertson, A.G., and Alex Chambers knew each other from high school. Robertson and A.G. met when attending middle school and had a brief sexual relationship during their senior year of high school. After high school, A.G. and Chambers attended Indiana University in Bloomington, while Robertson attended Ivy Tech in Lawrence, Indiana. On August 23, 2014, A.G. and some friends had decided to attend a fraternity party, while Robertson had come to Bloomington with his then-girlfriend, intending to attend a different fraternity party with Chambers.

[4] A.G. arrived at the party at around 10 or 11 p.m., drank three or four shots of an alcoholic beverage called "Taaka[,]" and left around 1:30 the next morning. Tr. Vol. I p. 38. A.G. had previously arranged to meet Chambers at his party and managed to secure a ride to the vicinity. A.G. had been in contact with Chambers until his telephone ran out of power, so, after one message from Chambers sent from Robertson's telephone, she now communicated with Robertson. A.G. was unfamiliar with her location, so she sent her location to Robertson in a text message. Robertson called A.G. and indicated that he would come find her.

[5] At 2:10 a.m., A.G. noticed Robertson walking in her direction. Robertson hugged A.G. and told her that he missed "hanging out" with her. Tr. Vol. I p. 51. Robertson grabbed A.G.'s buttocks, but A.G. pulled his hands off of her and told him to stop. A.G. asked Robertson where the party was, and

Robertson indicated that he was not sure. Robertson stated that he thought the party was in the direction of a nearby bell tower and started to lead A.G. that way. Robertson was "saying really sexual things," and A.G. could "tell he was really intoxicated because he … was stumbling and slurring his words." Tr. Vol. I p. 51. Once they reached the bell tower, it was apparent that Robertson did not know where he was going, so A.G. sat down and told him to try to find out where they needed to go. A.G. attempted to call several persons, none of whom answered.

[6] When Robertson saw that A.G. was trying to call Chambers, he told her that if she wanted to find out where the party was, she had to "give him head." Tr. Vol. I p. 52. A.G. declined, but Robertson pleaded with her and told her that he would not tell anyone if she complied. A.G. again declined. While Robertson was talking to A.G., he was touching his penis through his pants and talking about "how he missed it." Tr. Vol. I p. 53. After A.G. rejected Robertson's requests for oral sex a third time, he grabbed her by the throat and "started squeezing really hard." Tr. Vol. I p. 54. A.G. tried to remove Robertson's fingers from her neck, but Robertson responded by digging "his fingers and his fingernails deeper into the side of [her] neck[.]" Tr. Vol. I p. 53.

[7] A.G. lost consciousness, and when she came to, she saw that Robertson had removed his penis from his pants. Robertson held onto A.G.'s neck with one hand, while he used his other hand to try to pry open her mouth. Robertson moved his penis towards A.G.'s mouth and tried to force his penis into her mouth, but A.G. kept her teeth closed. A.G. leaned back and told Robertson to

stop. Robertson started to squeeze A.G.'s neck again, and A.G. told him that if he did not stop, she would scream. At that time, Robertson ran away. A.G. managed to obtain a ride back to her dormitory, where one of her friends photographed the red marks Robertson left on her neck.

[8] On August 26, 2014, Indiana University Police Detective Rebecca Ann Schmuhl interviewed Robertson, an interview that was videotaped. Robertson acknowledged that A.G. had communicated with him by phone on the night of the incident. Robertson stated that A.G. was "blowing up" his phone with text messages and had also called him to find out the location of the party that Chambers was attending. Tr. Vol. I p. 156. Robertson indicated that he had ignored A.G., but that while he was walking to another party, he saw her on the street, and she started screaming at him. Robertson stated that he told A.G. that Chambers did not want to see her, and that she had responded by screaming, crying and then walking away. Robertson indicated he had briefly spoken with a friend named Clay Hurst and then returned to the original party where Chambers and his girlfriend were. When Detective Schmuhl asked Robertson about A.G.'s claim that Robertson had choked her and tried to force her to perform oral sex, Robertson stated, "Wait, oral sex, what does that mean like?" Tr. Vol. I p. 159. Robertson later acknowledged that he and A.G. had engaged in oral sex previously, but claimed he did not know what the detective meant when she referred to oral sex.

[9] On October 21, 2014, the State charged Robertson with Level 1 felony attempted rape, Level 3 felony criminal confinement, Level 5 felony battery

resulting in serious bodily injury, and Level 6 felony strangulation. A bench trial was held on September 29, 2016, and Adrian "Clay" Hurst testified that he knew Robertson from high school and that on August 23, 2014, he and Robertson had discussed meeting up at a party that Hurst was attending at Stadium Crossing in Bloomington. Hurst further testified that Robertson never made it to that party, but Robertson did ask Hurst "to come to Court and lie about seeing him that night[.]" Tr. Vol. I p. 128.

[10] The trial court found Robertson guilty of the lesser included offenses of Level 3 felony attempted rape, Level 5 felony criminal confinement, Class A misdemeanor battery, as well as Level 6 felony strangulation. On April 25, 2017, the trial court imposed an aggregate sentence of eight years, with six years suspended to probation, eighty-five days to be executed in jail, and the remainder of the executed sentence to be served on home detention.

# Discussion and Decision

## I. Double Jeopardy

[11] Robertson contends that his convictions for criminal confinement, battery, and strangulation violate Indiana prohibitions against double jeopardy. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), the Indiana Supreme Court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to … the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*. at 49–50.

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53. Merely a remote or speculative possibility is not enough; rather, the record must establish that the jury used the same evidentiary facts to establish the essential elements of the two offenses. *Hopkins v. State*, 759 N.E.2d 633, 640 (Ind. 2001) (citations omitted). "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (citing *Spivey v. State*, 761 N.E.2d at 832 (Ind. 2002); *Richardson*, 717 N.E.2d at 54 n.48).

[12] The State's charging information for criminal confinement alleged that "Robertson did knowingly or intentionally confine [A.G.] without the consent of [A.G.], said act resulting in serious bodily to wit: loss of consciousness." Appellant's App. Vol. II p. 12. For the battery charge, the State alleged that "Robertson did knowingly or intentionally touch [A.G.] in a rude, insolent, or angry manner, resulting in serious bodily injury, to wit: loss of consciousness." Appellant's App. Vol. II p. 13. For strangulation, the State alleged that "Robertson in a rude, insolent, or angry manner, did knowingly or intentionally apply pressure to the throat or neck of [A.G.] in a manner that impeded normal breathing or blood circulation of [A.G.]" Appellant's App. Vol. II p. 13. In

summary, the State alleged and ultimately proved the commission of each offense above with evidence of Robertson's act of strangulation of A.G.

[13] The State concedes that there is a reasonable possibility that the trial court relied on the same actual evidence to sustain Robertson's convictions for criminal confinement, battery, and strangulation but argues that we should remand to give the trial court a chance to clarify that it did not, in fact, rely on the same actual evidence to sustain all three convictions. The State, however, does not identify any evidence beyond Robertson's strangulation of A.G. that could even arguably support his battery and strangulation convictions, and our review of the record does not reveal any. As such, we conclude that the proper remedy in this case is the vacation of Robertson's convictions for battery and strangulation. *See Richardson v. State*, 717 N.E.2d 32, 55 (Ind. 1999) (clarifying that the convictions with "the less severe penal consequences" should be vacated in the event of a double jeopardy violation). Because the trial court ordered the sentences for battery and strangulation to run concurrently with the sentences for attempted rape and criminal confinement, Robertson's aggregate sentence does not change.

## II. Text Messages

[14] Robertson contends that the trial court abused its discretion in admitting exhibits relating to the text message exchange between Robertson and A.G. before his attack on her. In general, the admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct.

App. 2002), *trans. denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

[15] Even if we assume that exhibits regarding the text messages were erroneously admitted, any error can only be considered harmless. An error will be found harmless if its probable impact on the factfinder, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Gault v. State*, 878 N.E.2d 1260, 1267–68 (Ind. 2008); *Sylvester v. State*, 698 N.E.2d 1126, 1129 (Ind. 1998). A review of the text messages shows that the majority of the messages were from A.G.'s phone, with most of them either asking for directions or stating A.G.'s location. (State's Ex. 2). Of the twenty-one text messages that were admitted, fifteen were from A.G.'s phone. (St. Ex. 2). The remaining six messages consisted of an initial message stating, "This is Alex my phone died. The house is on Jordan by 17th"; followed by five other messages interspersed throughout A.G.'s messages. The five messages stated, "Who's this[,]" "Okay what],]" "What[,]" "Hey call me real quick I need to ask you somethugb [sic]![,]" and "Something[.]" State's Ex. 2. There is nothing in the text messages that is incriminating, and Robertson himself admitted in his statement to police that he had been in communication with A.G. In light of A.G.'s testimony; the physical evidence that she had, in fact, been attacked; and

Robertson's request to Hurst that he lie in court for him, any error in the admission of the text messages could only be considered harmless.

## III. Transcript of Robertson's Videotaped Statement to Police

[16] Robertson alleges the trial court erred in admitting a transcript of his videotaped statement to police. (Appellant's Brief at 29-30). As mentioned above, a trial court has broad discretion in ruling on the admissibility of evidence, and its ruling will be disturbed only where it is shown that the court abused that discretion. *Curley*, 777 N.E.2d at 60. When Robertson's videotaped statement, which was identified as State's Exhibit 13, and the transcript of the statement, which was identified as State's Exhibit 14, were offered, Robertson objected to the admission of the transcript and the following discussion occurred:

> TRIAL COURT: Okay, I mean, I guess the most important thing is the, I'm gonna be watching the DVD and during the trial, right?
>
> PROSECUTOR: Right, and it's just used to assist you, Your Honor. I mean, we can just offer it for demonstrative purposes to assist you as you're listening to, um, the audio tape, video tape.
>
> TRIAL COURT: You're okay with the DVD?
>
> DEF. COUNSEL: I'm fine with the DVD.
>
> TRIAL COURT: Well, well let's admit the DVD and I probably won't even need the transcript if I listen to the video myself. But if I, if I have someplace that I have some confusion about, we'll talk about it. How's that?
>
> DEF. COUNSEL: Fair enough.

Tr. Vol. I p. 144.

[17]     Even assuming, *arguendo*, that the transcript of Robertson's videotaped statement was erroneously admitted, we fail to see how that could have prejudiced him in any way. After all, the trial court watched Robertson's videotaped statement, which was admitted without objection. At worst, a transcript of the statement would have been cumulative of the videotaped statement. "[A]n error in the admission of evidence is harmless if the erroneously admitted evidence is cumulative of other evidence appropriately admitted." *Collins v. State*, 826 N.E.2d 671, 679 (Ind. Ct. App. 2005), *trans. denied*. Any error the trial court may have committed in relation to the transcript of Robertson's statement could only be considered harmless.

## IV. Vouching

[18]     Robertson challenges the testimony of several witnesses based on Indiana Evidence Rule 704(b), which provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Robertson did not object on this basis at trial and has therefore waived the issue for appellate review. Robertson attempts to avoid the effects of his waiver by arguing that the admission of the testimony amounts to fundamental error.

[19]     The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant

fundamental due process." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Id.* (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). This exception is available only in "egregious circumstances." *Id.* (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)); *see also Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007).

[20] Robertson initially alleges that Nicole Downs and Kelly Evans, other residents of A.G.'s dormitory, vouched for A.G. by "insisting on the victim's self-assessment for further injury even after A.G. said that she had not been raped[.]" Appellant's Brief p. 24. In the portion of Downs's testimony to which Robertson refers, Downs stated that she had suggested that A.G. "check herself out" for injuries after A.G. said that she had lost consciousness. Tr. Vol. I p. 93. Similarly, Evans testified that after A.G. told her what happened, Evans and Downs told A.G. that "she should go check herself to make sure everything was okay." Tr. Vol. I p. 102. We conclude that Evans's and Downs's testimony did not amount to impermissible vouching. Downs testified that A.G. was "in hysterics"; Evans testified that she was "shaking, crying, [and] clearly upset"; and both witnesses testified that they saw the marks on A.G.'s neck, so recommendations that she not ignore them seems perfectly reasonable, however she acquired them. Tr. Vol. I pp. 91, 101. Quite simply, Robertson does not point to any testimony by Downs or Evans stating that they believed A.G. or expressing an opinion as to the truth of A.G.'s statements.

Vouching occurs when a witness testifies that she believes another witness or opines that what another person has said is true, and that did not occur here. *See Gutierrez v. State*, 961 N.E.2d 1030, 1033-1035 (Ind. Ct. App. 2012) (determining that a case manager's testimony that she "absolutely" believed what the victim had said, as well as a sexual-assault nurse's testimony that she "believe[d] that the victim was telling the truth," was impermissible vouching testimony).

[21] Robertson also claims that Detective Short vouched for A.G. by testifying as follows: "if there's cases that need followed up on or they need more attention, investigator's then given that case[;]" "I could tell that it was not just a simple battery case, that it was something more than that[;]" and that after speaking with A.G., he collected evidence from her room and prepared a report, which he forwarded to his supervisor. Tr. Vol. 1 pp. 131, 135. Again, none of these statements amounted to vouching. Detective Short merely indicated that he pursued his investigation. While this was presumably, at least in part, because of what A.G. told Detective Short, this is not the same as opining that she was telling the truth, only that what she said was worth investigating. Robertson has failed to show any error due to impermissible vouching, much less fundamental error.

# Conclusion

[22] We conclude that Robertson's convictions for battery and strangulation violate prohibitions against double jeopardy and consequently vacate those

convictions. We also conclude that Robertson has failed to show that the trial court committed any harmful error in admitting evidence of text messages exchanged by A.G. and Robertson or the transcript of Robertson's videotaped statement to police. Finally, we conclude that Robertson has failed to show the admission of allegedly vouching testimony amounted to error, much less fundamental error.

[23] We affirm the judgment of the trial court in part and reverse in part.

Robb, J., and Altice, J., concur.