## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2018, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of M.C. (Minor Child),

J.C. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

May 30, 2018

Court of Appeals Case No.
31A01-1712-JC-2973

Appeal from the Harrison Circuit Court

The Honorable John T. Evans, Judge

Trial Court Cause No.
31C01-1707-JC-23

**Mathias, Judge.**

[1] J.C. ("Father") appeals the trial court's order in which the Harrison Circuit Court determined that Father's fifteen-year-old daughter M.C. ("Child") is a child in need of services ("CHINS"). Father raises two issues for our review, which we restate as:

I.      Whether there was sufficient evidence to support the CHINS adjudication?

II.     Whether the trial court committed fundamental error by admitting alleged vouching testimony during the fact-finding hearing?

[2] We affirm.

## Facts and Procedure

[3] Child was born to H.W. ("Mother")[1] and Father in 2002. Prior to Child's birth, in 1998, Father was charged with two counts of Class C felony sexual misconduct with a minor, and he pleaded guilty to one count in 1999. Father was sentenced to six months executed and two and one-half years suspended to probation. However, his probation was revoked eight months later, and he was ordered to serve two years in the Department of Correction ("DOC"). In 2002, Father was charged with Class B felony sexual misconduct with a minor, and he pleaded guilty to the charge as a Class C felony in 2004. Father was

---

[1] Mother did not file a brief on appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

sentenced to four years executed in the DOC and four years supervised to probation. His probation was again revoked.

[4] Mother had custody of Child for the first fourteen years of Child's life. Then in November 2016, Mother was arrested and pleaded guilty to Class A misdemeanor possession of methamphetamine. After Mother's arrest and incarceration in the DOC, Father petitioned the court for temporary custody of Child. The trial court granted Father's request, despite his prior convictions. Prior to Mother's arrest, Child spent time with Father sporadically and not on a consistent basis.

[5] Sometime around spring break 2017, Father allegedly began sexually molesting Child. Child explained, "I didn't do something right, so he came into my room the next morning and made me perform oral on him." Tr. p. 15. Child testified that Father blindfolded her, tied her hands together, and "he would go outside and act like he was talking to someone else and then he would come back into the room and make me perform oral on him." *Id.* at 17. The abuse allegedly happened more than five times, although Father did not tie Child's hands each time. And on two occasions, Child testified that Father attempted to have anal sex with her, but he stopped when she told him to. *Id.* at 19–20.

[6] After Mother was released from the DOC in June 2017, Child told her maternal grandmother what happened while Mother was at work. They immediately went to the Crawford County Sherriff's department to report the incidents. On

June 24, the Department of Child Services ("DCS") received a report of Father's alleged sexual assault on Child.

[7] On June 26, Child was interviewed by Chelsey Bohnert ("Bohnert"), a forensic interviewer with the Comfort House Child Advocacy Center. Child described Father's sexual assault during the interview, and Bohnert found Child's testimony reliable. DCS case manager Lisa Watson ("Watson") was present at the interview, and she testified that she was able to substantiate Child's allegations against Father after an investigation. *Id.* at 79. Child was placed temporarily with Mother and her grandmother at some point after she reported the sexual assault, and she has not returned to Father's home since.

[8] On July 13, DCS filed a petition alleging that Child is a CHINS. On October 24, the trial court held a fact-finding hearing during which it made verbal findings and adjudicated Child a CHINS. The court issued written findings on November 1, and it held the dispositional hearing on November 21 and November 27. The court entered its order on November 27—*nunc pro tunc* to November 21—in which it ordered Father take part in reunification services and maintained Child's placement with Mother.

[9] Father now appeals Child's adjudication as a CHINS.

## The CHINS Statutes and Our Standard of Review

[10] Our supreme court explained in *In re N.L.*, 919 N.E.2d 102, 105 (Ind. 2010), that Indiana Code sections 31-34-1-1 through 31-34-1-11 specify the elements that DCS must prove in order to establish that a CHINS: (1) the child is under

the age of 18; (2) one or more particular set or sets of circumstances set forth in the statute exists; and (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court.

[11]   In this case, DCS alleged that the Child was in need of services under Indiana Code sections 31-34-1-1, 31-34-1-3, and 31-34-12-4.5. The first of these sections provides that a child is a CHINS if, before the child becomes eighteen years of age:

> (1)     the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2)     the child needs care, treatment, or rehabilitation that:
>
> > (A)     the child is not receiving; and
> >
> > (B)     is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-1.

[12]   The second section provides in part that a child is a CHINS if, before the child becomes eighteen years of age:

> (1)     the child is the victim of an offense under:
>
> > (A)     IC 35-42-4-1 [rape];
> >
> > > ***

> > (I)    IC 35-42-4-9 [sexual misconduct with a minor];
>
> > > ***
>
> > (N)    IC 35-46-1-3 [incest];
>
> > > ***
>
> > (2)    the child needs care, treatment, or rehabilitation that:
>
> > > (A)    the child is not receiving; and
> > >
> > > (B)    is unlikely to be provided or accepted without the coercive intervention of the court.
>
> > (b)    A child is a child in need of services if, before the child becomes eighteen (18) years of age, the child:
>
> > (1)    lives in the same household as an adult who:
>
> > > (A)    committed an offense described in subsection (a)(1) against a child and the offense resulted in a conviction or a judgment under IC 31-34-11-2; or
> > >
> > > (B)    has been charged with an offense described in subsection (a)(1) against a child and is awaiting trial; and
>
> > (2)    needs care, treatment, or rehabilitation that:
>
> > > (A)    the child is not receiving; and
> > >
> > > (B)    is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-3.

[13]    And the last of the above-mentioned sections, which we have previously referred to as the "Presumption Statute," *see In re D.F.*, 83 N.E.3d 789, 796 (Ind. Ct. App. 2017), provides in relevant part:

(a) There is a rebuttable presumption that a child is a child in need of services of the state establishes that the child lives in the same household as an adult who:

(1) committed an offense described in IC 31-34-1-3 or IC-31-34-1-3.5 against a child and the offense resulted in a conviction or judgment under IC 31-34-11-2.

I.C. § 31-34-12-4.5.

[14] We first note that "the purpose of a CHINS adjudication is to protect children, not punish parents." *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015), *trans. denied* (citing *N.L.*, 919 N.E.2d at 106). A CHINS adjudication is not a determination of parental fault but rather is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention. *Id.* (citing *N.L.*, 919 N.E.2d at 105). Because CHINS proceedings are civil in nature, DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the relevant statutes. *Id.*

[15] On appeal, we must determine whether the evidence presented supports the findings of the trial court, and second, whether the findings support the judgment. *In re T.S.*, 906 N.E.2d 801, 804 (Ind. 2009). We do not reweigh the evidence nor judge the credibility of the witnesses. *In re D.F.*, 83 N.E.3d at 796. Instead, we consider only the evidence that supports the court's decision and reasonable inferences drawn therefrom. *Id.* We will reverse only upon a showing that the decision of the court was clearly erroneous. *Id.*

## DCS Presented Sufficient Evidence to Support the Trial Court's CHINS Determination

[16] Father claims that DCS presented insufficient evidence to support the trial court's CHINS findings under section 31-34-1-1. We agree; however, father does *not* challenge the sufficiency of the evidence under sections 31-34-1-3 or 31-34-12-4.5, and we find ample evidence to support the trial court's findings under those two sections.

[17] Father argues that "[w]hile DCS presented evidence that the Child was molested, there was simply no evidence presented that she suffered an endangerment as the result of a lack of food, clothing, shelter, medical care, education, or supervision." Appellant's Br. at 13. The State responds that "Father's actions do not amount to providing Child with any sense of adequate supervision." Appellee's Br. at 19. And in its order, the trial court adjudicated Child as a CHINS, in part, under I.C. § 31-34-1-1 because "[Child] was abused[2] and/or neglected by her Father." Appellant's App. p. 125.

[18] Here, for section 31-34-1-1 to apply to Child, there must be sufficient evidence to support the conclusion that "child's physical or mental condition is seriously impaired or seriously endangered as a result of the . . . neglect of the child's parent . . . to supply the child with necessary food, clothing, shelter, medical care, education, or supervision[.]" I.C. 31-34-1-1(1). While we find Father's

---

[2] We note that the word "abused" is not found in the text of section 31-34-1-1.

alleged sexual assault of his daughter heinous, our review of the record does not provide evidence that Father neglected to supply Child with any of the listed items in section 31-34-1-1(1). Accordingly, we find that the trial court erred when it concluded that Child was a CHINS under section 31-34-1-1. However, the trial court was presented with overwhelming evidence for it to conclude that Child was a CHINS under sections 31-34-1-3 and 31-34-12-4.5.

[19]   A child is a CHINS under section 31-34-1-3(a)(1) if the child is a victim of rape, sexual misconduct, or incest. Child testified that Father molested her at least five times by forcing her to perform oral sex on him. Father also attempted anal sex on Child, and he did not stop until Child told him to. The initial DCS case manager explained that after an investigation, Child's allegations against Father were substantiated. And Bohnert, who conducted Child's forensic interview, testified that based on her training and experience, she found Child's testimony reliable. Moreover, it is undisputed that Child needs counseling and treatment which was not being provided prior to DCS's involvement in this case. *See* I.C. § 31-34-1-3(a)(2).

[20]   Under section 31-34-1-3(b)(1), a child is a CHINS if the child lives in the same household as an adult who has been convicted of sexual misconduct with a minor or child molestation. Father was convicted in 1999 of Class D felony sexual misconduct with a minor, and in 2004 of Class C felony child molesting. *See* Ex. Vol., State's Ex. 4, p. 15; State's Ex. 5, p. 28. Child was living with Father from sometime in November 2016, when Mother was incarcerated, up until Child told her grandmother about the alleged sexual assault in June 2017.

Therefore, the trial court could properly conclude that Child was a CHINS pursuant to section 31-34-1-3(b).

[21] The trial court also did not err when it concluded "a presumption exists pursuant to IC 31-34-12-4.5 and Father failed to rebut said presumption." Appellant's App. p. 125. The Presumption Statute states, in part, that "[t]here is a rebuttable presumption that a child is a child in need of services if the state establishes that the child lives in the same household as an adult who committed an offense described in IC 31-34-1-3 . . . against a child and the offense resulted in a conviction[.]" I.C. §31-34-12-4.5(a)(1). Again, Father has been convicted of both sexual misconduct with a minor and child molestation, which both fall under section 31-34-1-3. *See* I.C. §§ 31-34-1-3(C) & (I).

[22] Therefore, although there was insufficient evidence to support the adjudication of Child as a CHINS under section 31-34-1-1, there was plenty of evidence to support the trial court's conclusion that Child was a CHINS under section 31-34-1-3 and the Presumption Statute. Accordingly, we affirm the trial court's adjudication of Child as a CHINS.

## The Trial Court did not Commit Fundamental Error when it Admitted Alleged Vouching Testimony

[23] Father also claims that the CHINS determination under Indiana Code section 31-34-1-3 should be reversed because the trial court improperly allowed and relied on vouching testimony prohibited by Indiana Evidence Rule 704(b). DCS responds that Father openly challenged Child's credibility during cross-

examination, and he therefore opened the door for DCS to ask forensic interviewer Bohnert questions about Child's reliability. In the alternative, DCS argues that even if the trial court erred when it admitted the testimony, it does not amount to fundamental error. We agree with DCS.

[24] Father specifically asserts that the trial court abused its discretion when it admitted alleged vouching testimony from forensic interviewer Bohnert. But, Father's counsel did *not* object to the testimony during the hearing as vouching testimony. Rather, Father's counsel objected on hearsay and best evidence grounds, and the court overruled both objections. *See* Tr. pp. 89–91. Our supreme court has explained that the "[f]ailure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error." *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) (quotation and citation omitted). Moreover, a party "may not argue one ground for an objection to the admission of evidence at trial and then raise new grounds on appeal. This ensures that a trial judge is fully alerted to the legal issue being raised." *Id.* (citation omitted).

[25] Although Father has not properly preserved this issue for appellate review, he contends that the admission of the alleged vouching testimony constitutes fundamental error. We disagree. The concept of fundamental error "is a narrow exception to the waiver doctrine in that an 'error was so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal.'" *In re G.P.*, 4 N.E.3d 1158, 1167 n.8 (Ind. 2014) (quoting

*Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012)). Fundamental error will only be found when "the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006) (citation omitted).

[26]   Vouching testimony is generally prohibited under Indiana Evidence Rule 704(b) which provides that "witnesses may not testify to opinions concerning . . . whether a witness has testified truthfully." The challenged testimony from the fact-finding hearing is as follows:

| | |
|---|---|
| [DCS Counsel]: | When you interview these children do you ever test them for what I would call deceptiveness or truthfulness or credibility? |
| [Bohnert]: | So in my training, like the Child First Training we were taught to look for signs of reliability or signs that they were being credibly [sic]. So some of those would be like if they make a spontaneous disclosure or if they correct me or disagree with me. If they sit - make a statement against their own interest. Those would be some of the things we would look for as far as signs of reliability. |
| [DCS Counsel]: | Okay. And during your interview with [Child] did you look for signs of reliability? |
| [Bohnert]: | I did. And I did upon re-watching it to prepare for this also. |
| [DCS Counsel]: | And what is the result[] of that evaluation where they're not - [Child] was reliable? |
| [Bohnert]: | So based on kind-of what I've explained, she did do some of those things that would |

indicate to me that she was reliable, like correcting me. Something about a chair, I called it a yoga chair and it was actually a Yoda chair. Something about how she was standing at one point, she kind-of disagreed –

\*\*\*

[Bohnert]: Okay, uhm, yes we talked about that she disagreed or corrected me. That she made spontaneous – we didn't talk about that, but she made spontaneous disclosure so we hadn't gotten to that. The interview kind-of goes in stages and we hadn't really gotten to the stage where I asked her to tell me about why she was there and she still disclosed about what was going on and she made disclosures about things other than what I was asking about.

[DCS Counsel]: So those are all signs of reliability? Is that correct?

[Bohnert]: Yes according to my training.

[DCS Counsel]: So you have no reason to believe that [Child]'s being deceptive during her interview?

[Bohnert]: Based on my training and experience she was being – she was doing the signs of reliability. She was being reliable or credible.

[DCS Counsel]: Okay and again you just said, based upon your training and education and experience, is that correct?

[Bohnert]: Yes.

Tr. pp. 88–92.

[27] Father cites to our court's decision in *Gutierrez v. State*, 961 N.E.2d 1030 (Ind. Ct. App. 2012), to support his position that Bohnert's alleged vouching testimony constitutes fundamental error. In that case, Gutierrez was accused of sexually molesting his step-daughter. During Gutierrez's criminal jury trial, a DCS case manager testified, over an objection for relevancy, that she "absolutely" believed step-daughter was telling the truth. *Id.* at 1033. The deputy prosecutor also argued during closing that he believed step-daughter's testimony. On appeal, a panel of this court explained, "[case manager] testified that she 'absolutely' believed [step-daughter]'s testimony . . . [a]nd the deputy prosecutor contemporaneously inserted his own opinion that he believed step-daughter. Therefore, the admission of [case manager]'s testimony amounted to fundamental error." *Id.* at 1035.

[28] *Gutierrez* is distinguished from the case before us in two notable ways. First, in the case before us, there was no jury, and our courts have consistently held:

> We generally presume that in a proceeding tried to the bench, a court renders its decisions solely on the basis of relevant and probative evidence. This longstanding principle has been termed the judicial-temperance presumption. We presume that the trial judge is aware of and knows the law and considers only evidence properly before him or her in reaching a decision. The risk of prejudice is quelled when the evidence is solely before the trial court.

*Hinesly v. State*, 999 N.E.2d 975, 987 (Ind. Ct. App. 2013), *trans. denied* (citations omitted). And our court has explained that "the concern with improper vouching testimony is that the jury may be influenced in a manner inconsistent

with the defendant's right to a fair trial." *Id.* at 985. We do not have that concern before us here, because the fact-finding hearing did not take place in front of a jury. And second, *Gutierrez* was a criminal trial with a beyond a reasonable doubt burden of proof. Here, the burden of proof before the fact-finder was only a preponderance of the evidence.

[29] Moreover, Father's counsel questioned Child's credibility during the fact-finding hearing. Counsel told Child, "So, there's a couple of things that you're saying today that don't line-up with what you said back when you met with them and I just want to go over a few of those[.]" Tr. p. 28. He also remarked to the trial court after an objection, "[Child] was placed under oath several weeks ago and her statement then should have been true and accurate. And if her statement varies under oath today than when she was under oath a few weeks ago, I think I should be able to ask the witness why the statements are different." *Id.* at 30–31. He continued to question Child's veracity on several more occasions during cross-examination. *Id.* at 32–34.

[30] Thus, even if Bohnert's challenged testimony was an improper opinion on Child's truthfulness, it was nevertheless admissible because Father's counsel opened the door to such testimony when he repeatedly raised the issue of Child's credibility during his cross-examination. Our supreme court has explained:

> Opening the door refers to the principle that where one party introduces evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof,

even though the rebuttal evidence otherwise would have been inadmissible.

*Sampson v. State*, 38 N.E.3d 985, 992 n.4 (Ind. 2015). When the door is opened, DCS may introduce otherwise inadmissible evidence if it is a fair response to evidence elicited by Father's counsel. *See Wilder v. State*, 91 N.E.3d 1016, 1023 (Ind. Ct. App. 2018).

[31] Because Father's counsel openly questioned Child's credibility on several occasions, DCS was entitled to elicit testimony from Bohnert about her opinion of Child's reliability after performing the forensic interview. *Cf. Hamilton v. State*, 43 N.E.3d 628, 633 (Ind. Ct. App. 2015) (simply asking children if they had been told what to say does not open the door to ask the forensic interviewer whether she observed any indicators of coaching in either child), *trans. denied*.

[32] Assuming, *arguendo*, that Father's counsel did not open the door and Bohnert's testimony was improper vouching testimony, the admission of the testimony does not amount to fundamental error. This case was tried directly to the bench, and there is no evidence that the trial court relied on Bohnert's testimony in adjudicating Child as a CHINS. Moreover, Child testified in detail about Father's alleged sexual abuse. DCS family case manager also testified that she was able to substantiate Child's claims after an investigation. Therefore, the alleged vouching testimony was merely cumulative. Simply put, we cannot say that the admission of Bohnert's challenged testimony denied Father fundamental due process. Accordingly, the trial court did not commit fundamental error by failing to exclude the challenged testimony.

# Conclusion

Based on the facts and circumstances before us, we find that there was insufficient evidence to support a CHINS finding under Indiana Code section 31-34-1-1. However, there was ample evidence to support the trial court's finding under Indiana Code sections 31-34-1-3 and 31-34-12-4.5, and therefore, the trial court did not err when it adjudicated Child a CHINS. Further, Father's counsel failed to object to the challenged testimony on the grounds that he now raises in this appeal, and the trial court did not commit fundamental error when it did not exclude the testimony during the fact-finding hearing. Accordingly, we affirm.

Riley, J., and May, J., concur.